IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 11-0829 SI |
| METROPCS WIRELESS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>Defendants. | **ORDER DENYING DEFENDANT MITSUI TAIWAN'S MOTION TO DISMISS THE METROPCS' FIRST AMENDED COMPLAINT** |

On October 28, 2011, the Court heard argument on the motion by defendant Mitsui & Co. (Taiwan), Ltd. ("Mitsui Taiwan") to dismiss the first amended complaint ("FAC") of plaintiff MetroPCS Wireless, Inc. Having considered the arguments of the parties and the papers submitted, and for good cause appearing, the Court hereby DENIES defendant's motion.

**BACKGROUND**

Plaintiff MetroPCS "provide[s] wireless mobile telecommunication services in selected major metropolitan areas in the United States." FAC at ¶20. It filed this action in the Northern District of Texas on December 17, 2010, seeking to recover for a "long-running conspiracy . . . to fix, raise, stabilize, and maintain prices for Liquid Crystal Display panels . . . ." *See* Compl. at ¶1. The action was subsequently transferred to this Court as part of MDL No. 1827, and, on July 8, 2011, MetroPCS filed its FAC.

The FAC alleges that MetroPCS was injured when it purchased "mobile wireless handsets" that contained price-fixed LCD panels. FAC at ¶238-39. It includes antitrust claims under the Sherman Act, California's Cartwright Act, the Illinois Antitrust Act, and New York's Donnelly Act, as well as a claim under California's Unfair Competition Law. FAC at ¶¶263-300. Among numerous other entities, the FAC names as defendants two entities from the Mitsui corporate family: Mitsui Taiwan and Mitsui & Co. (USA), Inc. ("Mitsui USA"). FAC at ¶¶35-36. The parent company, Mitsui & Co., Ltd. ("Mitsui"), a Japanese company headquartered in Japan, is named as a co-conspirator but not a defendant. *See* FAC at ¶37. The complaint alleges that the Mitsui entities participated in the conspiracy on behalf of Sanyo, a manufacturer of LCD panels:

> 120. Defendant Mitsui participated in multiple bilateral meetings during the Relevant Period, and agreed on prices and supply levels for LCD Products. In addition, Mitsui attended at least one bilateral meeting with Defendant Chunghwa during 2001, and multiple bilateral meetings with co-conspirator Samsung in the U.S. at which similar subjects were discussed. At that and other meetings, Mitsui acted as an agent of Sanyo Consumer and reached agreements with other competitors about prices for LCD Products sold in the United States and elsewhere.

FAC at ¶120.

On August 5, 2011, Mitsui Taiwan[1] filed a motion to dismiss MetroPCS's FAC. Mitsui Taiwan argues that it "is headquartered in and organized under the laws of Taiwan, has no physical presence in the United States, and lacks the 'minimum contacts' with the United States necessary to justify haling [it] before this Court." Motion at 1. Thus, it seeks to be dismissed from this lawsuit for lack of personal jurisdiction. Alternatively, Mitsui Taiwan asserts that this Court lacks subject matter jurisdiction over MetroPCS's claims against it.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*,

---

[1] Mitsui USA is not a party to Mitsui Taiwan's motion.

2

511 U.S. 375, 377 (1994) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Motions to dismiss for lack of personal jurisdiction are heard under Federal Rule of Civil Procedure 12(b)(2). In order for a court to exercise jurisdiction over a non-resident defendant, the defendant must have the requisite minimum contacts with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two forms of personal jurisdiction: "specific" and "general." "A court may exercise specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)).

The plaintiff has the burden of establishing the district court's personal jurisdiction over a defendant. *Doe I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam). However, a district court should not act on the defendant's motion to dismiss without first holding an evidentiary hearing. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). Therefore, the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss. *Id.*; *cf. Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.

3

1977). Unless directly contravened, a plaintiff's version of the facts is taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Unocal*, 248 F.3d at 922 (quoting *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (holding that "[b]ecause the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [plaintiff's] version of events for purposes of this appeal").

**DISCUSSION**

As mentioned above, Mitsui Taiwan moves for dismissal on the grounds that this Court lacks both personal jurisdiction and subject matter jurisdiction.

**I.     Personal Jurisdiction**

Mitsui Taiwan first argues that the Due Process Clause of the United States Constitution forbids it from being subjected to this Court's jurisdiction. It asserts that it lacks the necessary "minimum contacts" with the forum to be forced to defend itself in this Court. In this instance, the relevant forum for this minimum contacts analysis is the United States. *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1415-16 (9th Cir. 1989).

Mitsui Taiwan argues that this Court may not exercise either general or specific jurisdiction over it. It argues that general jurisdiction is lacking because it has virtually no contacts with the United States. According to an affidavit from Makoto Ichikawa, the General Manager of Mitsui Taiwan, Mitsui Taiwan is headquartered in and organized under the laws of Taiwan, has no presence in the United States, and has never sold or distributed TFT-LCD panels anywhere in the United States. Motion, Exh. 1 ("Ichikawa Decl.") at ¶2-6; *see also id.* at ¶6 (stating that Mitsui Taiwan's "sales of TFT-LCD panels and products have been limited to Taiwan and few other countries outside North America"); *id.* at ¶9 ("[Mitsui Taiwan's] only sales in the United States have been of products not related to TFT-LCD products[,] occurred in a single year from 2002 to 2006 [and] constituted less than 1 percent of [Mitsui Taiwan's] income for that year . . . .").

4

Similarly, Mitsui Taiwan argues that its lack of contacts is fatal to any claim of specific jurisdiction. It argues that it has never "purposefully availed" itself of the privilege of conducting TFT-LCD business in the United States, and that MetroPCS's claims therefore cannot "arise out of" any U.S.-related activities. *See* Ichikawa Decl., ¶7 (stating that Mitsui Taiwan has never "billed or invoiced," "negotiated," "received revenue," "shipped," or otherwise "entered into any agreements for the sale or distribution of TFT-LCD panels or products in the United States"); *id.* at ¶10 ("[Mitsui Taiwan] has never had any meetings or discussions with any other defendant or alleged coconspirator in the United States regarding any issue related to TFT-LCD panels or products.").[2]

This Court previously considered Mitsui Taiwan's argument in connection with its motion to dismiss in the Electrograph matter. *See* Order Granting Mitsui Taiwan's Motion for Judgment on the Pleadings and for Dismissal, Master Docket No. 3395 (August 29, 2011). As in this case, Electrograph's complaint alleged that Mitsui Taiwan participated in the conspiracy as an agent for Sanyo.[3] Its complaint did not, however, contain any allegations about the actions of the other Mitsui entities. In opposition to Mitsui Taiwan's motion to dismiss, Electrograph argued that personal jurisdiction was proper because the Mitsui entities acted as a "single integrated enterprise." The Court rejected this argument because Electrograph's complaint did not contain any allegations to support its assertion that Mitsui operated as a single integrated enterprise. *Id.* at 6 ("The primary problem with Electrograph's theory is that no 'single integrated entity' allegations appear in its complaint."). Further, while Electrograph had attempted to introduce extrinsic evidence to support its single integrated entity theory, the Court found those documents, most of which consisted of public filings or customer presentations, inadequate to support its theory. *Id.* at 7 ("Other items Electrograph has provided are

---

[2] The Court GRANTS the unopposed requests for judicial notice filed by MetroPCS and Mitsui Taiwan.

[3] Many documents produced by Electrograph have also been produced by MetroPCS, and support the assertion that Mitsui Taiwan participated in the conspiracy in Taiwan. For example, one document, produced by Chunghwa Picture Tubes, documents a March 20, 2001, meeting with Mitsui Taiwan regarding sales of Sanyo products. The document contains information on the price, shipment status, and customers of variously sized Sanyo LCD panels. Declaration of Philip J. Iovieno in Support of MetroPCS' Opposition ("Iovieno Decl."), ¶11 & Exh. 10; *see also id..*, Exh. 33 (declaration of Chunghwa employee that "[b]etween 2001 and 2004, I and other Chunghwa employees met and exchanged information with employees of . . . Mitsui Busan (the Taiwanese agent for Sanyo Epson)."), Exh. 34 (memo documenting meeting between Hitachi and Mitsui Taiwan employee regarding pricing).

5

consistent with its single integrated entity theory, but do little to establish that Mitsui actually operated in an integrated fashion."). The Court suggested, however, that "evidence that the Mitsui entities worked together" might be sufficient to create personal jurisdiction over Mitsui Taiwan. *Id.* at 8.

Seizing on this last statement, MetroPCS has provided the Court with a number of documents that it claims demonstrate the degree to which the Mitsui entities worked together to advance the conspiracy. These documents support MetroPCS's allegations that the Mitsui entities cooperated and supported each other's participation in the conspiracy. Numerous emails show that all three Mitsui entities communicated with each other regarding the pricing of Sanyo LCD panels as well as the pricing of their competitors. For example, several emails reflect exchanges of pricing information between Mitsui Taiwan and Mitsui USA. *See*, *e.g.*, Iovieno Decl., Exh. 11 (email from Mitsui Taiwan directing Mitsui USA employee to "update your discussion with Dell . . . LG reduced the price to USD168 and got half the allocation"), Exh. 12 (email from Mitsui USA stating that "we spoke with Samsung rep here and he mentioned that they did not move on Dell aggressive requests for November pricing, as a matter of fact he said that they actually RAISED pricing for one model . . . ."), Exh. 13 (email from Mitsui USA stating that "this is very frustrating because we know for fact that other 12.1 XGA suppliers are not meeting target and are in our same price range, and Dell has resorted to making claims to suppliers that they Dell have in fact received lower pricing that what we are fairly sure was proposed from LG or Samsung for AtlasII"), Exh. 14 (email from Mitsui USA stating that "I checked with LG Austin and he confirmed LG price stays at $168 with the same payment terms"), Exh. 27 (email from Mitsui USA stating that "[b]efore meeting Dell today, we heard from Samsung rep / Mike Hanson that LG has actually met Sept 12.1 XGA price target of $158 but this price is for Dell only . . . . He said that Samsung had gone to $160/pc and was considering lower"), Exh. 28 (email from Mitsui USA documenting pricing conversation with LG Austin), Exh 30 (email from Mitsui USA containing price information from LG). Significantly, the bulk of these communications specifically discuss Mitsui's pricing to Dell computer, an American company. Further, the emails suggest that while Mitsui USA appears to have been responsible for price negotiations with Dell, Mitsui Taiwan communicated about pricing and quantity with Quanta, a manufacturer of Dell products.

Based on the above, the Court finds that the exercise of specific jurisdiction over Mitsui Taiwan

6

is appropriate. Specific jurisdiction exists where three factors are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

The documents MetroPCS has produced establish that Mitsui Taiwan "purposefully directed" its conspiratorial activities towards the United States. The evidence described above establishes that Mitsui Taiwan's conspiratorial activities were expressly targeted at the United States. *See also* Iovieno Decl., Exh. 36, 37 (emails discussing prices of LCD products in United States). Further, Mitsui Taiwan knew that its price-fixing activities would cause harm to Dell and other American companies. This is sufficient to satisfy the "purposeful direction" prong of the specific jurisdiction analysis. *See CollegeSource*, 653 F.3d at 1076 ("[The 'purposefully direct' test] requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." (internal quotation marks omitted)).

The other elements of the analysis are easily satisfied. MetroPCS's injury – its contention that it paid artificially high prices for LCD products – directly relates to Mitsui Taiwan's conspiratorial activities. Finally, the exercise of jurisdiction over Mitsui Taiwan would be reasonable. Typically, the burden of establishing that jurisdiction would be unreasonable involves a seven-factor analysis:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). Here, however, Mitsui Taiwan has not made any attempt to show that the exercise of jurisdiction would be unreasonable. *See College Source*, 653 F.3d at 1076 ("If [the plaintiff satisfies the first two prongs of the specific jurisdiction inquiry], the burden then shifts to [the defendant] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."). In any event, given its close affiliation with Mitsui USA, which remains

7

a defendant regardless of the outcome of Mitsui Taiwan's motion, the Court finds that the exercise of jurisdiction over Mitsui Taiwan is reasonable.

## II. Subject Matter Jurisdiction

Mitsui Taiwan next moves to dismiss the complaint for lack of subject matter jurisdiction, claiming that the Foreign Trade Antitrust Improvements Act of 1984 ("FTAIA") bars MetroPCS's antitrust claims. The Court previously rejected this argument in its order on Mitsui Taiwan's motion to dismiss the Electrograph complaint. *See* Order Granting Mitsui Taiwan's Motion for Judgment on the Pleadings and for Dismissal, Master Docket No. 3395 (August 29, 2011). Mitsui Taiwan has not convinced the Court to depart from this prior ruling. Its liability is not based upon its own foreign sales of LCD products, but is based on the role it allegedly played in fixing prices of Sanyo LCD panels later sold in the United States. Accordingly, its conduct falls within the domestic-injury exception to the FTAIA.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Mitsui Taiwan's motion to dismiss. Docket No. 40 in 11-0829; Docket No. 3218 in 07-1827.

**IT IS SO ORDERED.**

Dated: November 9, 2011

SUSAN ILLSTON
United States District Judge